02-09-383-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00383-CV

 

 


 
 
 Patsy Whitehead
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Gavin Mackenzie and Patricia Mackenzie
 
 
  
 
 
 APPELLEES
 
 


 

 

------------

 

FROM THE 342nd
District Court OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

This
appeal arises from a dispute between appellant Patsy Whitehead and appellees
Gavin and Patricia Mackenzie over the Mackenzies’ authority to use a strip of
land on Whitehead’s property to access their own adjacent property.  In two
issues, Whitehead contends that the trial court erred by denying her motion for
summary judgment and by granting the Mackenzies’ motion for summary judgment,
finding that an easement for ingress and egress exists on Whitehead’s property
to access the Mackenzies’ property.  We will affirm.

II.  Background

          The
Mackenzies are the owners of an approximate thirty-acre tract of land located
within Mansfield, Tarrant County, Texas.  Since the purchase of their property
in 1998, the Mackenzies have accessed their property via an existing paved
roadway which travels west across the southern portion of Whitehead’s property
and terminates at the eastern edge of the Mackenzies’ property.  No one has
particular recollection as to exactly when the roadway came into existence, but
it is known that the roadway has existed in excess of fifty years.  By one
neighbor’s account, the roadway was gravel until the 1960s but was later paved.
 After it was paved, neighbors aver that the City of Mansfield maintained the
roadway, even repairing potholes.

          Aside
from being utilized by the Mackenzies, it was also the main path of ingress and
egress by the Mackenzies’ predecessors in title.  Additionally, public servants
of various kinds have used the roadway over the years, beginning in at least
the 1950s, when Tarrant County used the road to obtain gravel from a pit
previously located on what is now the Mackenzies’ property, and continuing
until approximately 2000, when the City of Mansfield employees ceased using the
road for maintenance purposes.  According to neighbors and a previous owner,
the Mackenzies’ property was a dairy farm in the 1950s and milk trucks
regularly accessed the Mackenzies’ property, using the disputed roadway for
ingress and egress to the farm and a neighboring dairy farm.

          The
Mackenzies maintain that this roadway has been the exclusive means of ingress
and egress to their property since the purchase of their property in 1998.  In
June 2006, Whitehead began constructing a fence along the southern portion of
her property line.  Believing that this was an attempt by Whitehead to prevent
further use of the roadway, the Mackenzies filed this suit.

          In
their complaint, the Mackenzies sought injunctive relief to prevent Whitehead
from continuing construction of the fence, and they also sought declaratory
relief.  The trial court granted a temporary restraining order, preventing
further construction.  Whitehead filed a countersuit.  In her countersuit,
Whitehead made claims for trespass to try title and abuse of process.  The
Mackenzies filed their motion for summary judgment, contending that no genuine
issues of material fact exist that the Mackenzies, by prescriptive easement,
enjoy the right to use the roadway.  Alternatively, the Mackenzies argued that
they have the right to use the roadway because it is a public roadway by way of
an implied dedication.

          Whitehead
countered with her own no-evidence and traditional motions for summary judgment. 
Whitehead contended that the Mackenzies failed to provide any evidence that
they have a right to use the roadway through either prescriptive easement or
dedication to the public and that the Mackenzies had abused process as a matter
of law.  The trial court denied Whitehead’s motion and granted the Mackenzies’
motion.  This appeal followed.

III.  Discussion

          In
two issues, Whitehead contends that the trial court erred by denying her motion
for summary judgment and by granting the Mackenzies’ motion for summary
judgment.

          A.    Standard
of Review

          In
a summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v.
Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo. 
Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We consider
the evidence presented in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.  Mann
Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d
566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822–24
(Tex. 2005).

          When
a trial court’s order granting summary judgment does not specify the ground or
grounds relied on for its ruling, summary judgment will be affirmed on appeal
if any of the theories presented to the trial court and preserved for appellate
review are meritorious.  Knott, 128 S.W.3d at 216; Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

          When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.  Mann Frankfort,
289 S.W.3d at 848; see Myrad Props., Inc. v. LaSalle Bank Nat’l Ass’n,
300 S.W.3d 746, 753 (Tex. 2009).  The reviewing court should render the
judgment that the trial court should have rendered.  Mann Frankfort, 289
S.W.3d at 848.

B.      Implied
Dedication

          In her
first issue and in parts of her second issue, Whitehead argues that genuine
issues of material fact exist with regard to whether the roadway in question is
an easement by implied dedication.  Common law dedication can either be express
or implied.  Gutierrez v. Cnty. of Zapata, 951 S.W.2d 831, 837 (Tex.
App.—San Antonio 1997, no writ).  Both parties agree that this case does not
involve an express dedication; thus, the question presented is whether the
summary judgment evidence conclusively established an implied dedication of the
roadway to the public.  Specifically, Whitehead argues that there are fact
questions regarding donative intent and no evidence of public usage of the
roadway.

Whether
a road has been dedicated to public use is generally a question of fact.  Broussard
v. Jablecki, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). 
Implied dedication requires both a clear and unequivocal intention on the part
of the landowner to appropriate the land to public use and an acceptance by the
public.  Gutierrez, 951 S.W.2d at 838.  Because an implied dedication
results in “the appropriation of private property for public use without any
compensation to the landowner,” the Mackenzies bear a heavy burden to establish
an implied dedication.  Cnty. of Real v. Hafley, 873 S.W.2d 725, 728
(Tex. App.—San Antonio 1994, writ denied).

The
elements of an implied dedication are:  (1) the landowner
induced the belief that the landowner intended to dedicate the road to public
use; (2) the landowner was competent to do so; (3) the public relied
on the landowner’s actions and will be served by the dedication; and (4) there
was an offer and acceptance.  Las Vegas Pecan & Cattle Co. v. Zavala
Cnty., 682 S.W.2d 254, 256 (Tex. 1984); Stein v. Killough, 53 S.W.3d
36, 42 n.2 (Tex. App.—San Antonio 2001, no pet.).  Generally, an owner’s
donative intent may not be implied from evidence showing only that the public
used the land without objection from the landowner.  Fazzino v. Guido,
836 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  But
“evidence of long and continued use by the public raises a presumption of
dedication by the owner when the origin of the public use and the ownership of the
land at the time it originated cannot be shown, one way or the other, due to
the lapse of time.”  Id.; see also O'Connor v. Gragg, 161 Tex.
273, 279, 339 S.W.2d 878, 882 (1960).

1.       Presumption of Dedication

For
the presumption of dedication to apply, the origin of the public use and the
ownership at that time must be “shrouded in obscurity, and no proof can be
adduced showing the intention of the owner in allowing the use.”  Fazzino,
836 S.W.2d at 274 (quoting Dunn v. Deussen, 268 S.W.2d
266, 269 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.)); O'Connor,
339 S.W.2d at 882.  The O'Connor Court explained that we analyze whether
the open and known acts “are of such a character as to induce the belief that
the owner intended to dedicate the way to public use, and the public and
individuals act upon such conduct, proceed as if there had been in fact a
dedication, and acquire rights which would be lost if the owner were allowed to
reclaim the land, [if so,] then the law will not permit him to assert that there
was no intent to dedicate.”  O'Connor, 339 S.W.2d at 882–83 (internal
quotations omitted).

Thus, we must
determine whether the Mackenzies conclusively proved that the origin of the
roadway in question was “shrouded in obscurity” and that from that time, it was
subject to long and continuous use by the public.

Surrounding
neighbors testified that the roadway was used by the public as far back as they
could remember, that it was originally paved in the 1960s, and that it was
later maintained by the City of Mansfield.  Multiple witnesses testified that
for as long as they could remember, the roadway was the only means of access to
the Mackenzies’ property.  Yet no witness could precisely recall the exact
point in time when the roadway came into existence or the owner of the property
at such time.  But long and continued use by the public is evident.  Witness
testimony states that milk trucks regularly used the roadway to collect milk
from dairy farms operated on adjacent property and on the Mackenzies’ property
by the Mackenzies’ predecessors in title beginning at least in the mid-1950s. 
Tarrant County roadway maintenance vehicles utilized the roadway to collect
gravel from a gravel pit located on the Mackenzies’ property and also put the
same gravel on the roadway during the same period of time.  In short, a number
of witnesses indicate that this roadway has been in existence for a long time. 
Additionally, a four-foot fence separates the roadway from the remainder of
Whitehead’s property.  The totality of this evidence
merits application of the presumption of donative intent.  See Hatton v.
Grigar, 66 S.W.3d 545, 555–57 (Tex. App.—Houston [14th Dist.] 2002, no
pet.) (holding similar evidence legally sufficient to support implied
dedication).

While
a presumption does not result in shifting the burden of proof, it does shift
the burden of producing or going forward with the evidence to the party against
whom it operates.  Gen. Motors Corp. v. Saenz, 873 S.W.2d 353, 359 (Tex.
1993).  In the context of a summary judgment, this principle required
Whitehead, as the nonmovant, to produce evidence creating a genuine issue of
material fact to challenge this element.  Bush v. Fayette Cnty., No.
03-05-00274-CV, 2006 WL 952413, at *3 (Tex. App.—Austin, Apr. 13, 2006, no.
pet.).  But Whitehead failed to produce any evidence regarding the element of
intent or the applicability of the presumption of intention to dedicate the
area to the public.  Therefore, because the Mackenzies established through
their proof that the presumption applies and Whitehead did not offer evidence
to the contrary, we hold that the Mackenzies satisfied this element of implied
dedication.

2.       Public Use

Next,
Whitehead complains that there is no evidence that the public relied on the
dedication or that the dedication served a public purpose.  Specifically,
Whitehead contends that only the Mackenzies and the Whiteheads now use the
roadway.  But, as discussed above, there was ample testimony from witnesses who
had either used the road or seen the road used by the public since the 1950s. 
Evidence of long, continued, unquestioned use of a road supports a finding that
the public relied on an implied dedication of that road.  Supak v. Zboril,
56 S.W.3d 785, 791 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that
public use element of implied dedication was met when evidence demonstrated
public had used roadway for more than fifty years and roadway had been
separated from adjoining property by fences); Graff v. Whittle, 947
S.W.2d 629, 638–39 (Tex. App.—Texarkana 1997, writ denied) (holding public use
element met when multiple witnesses testified to long, continued use of
roadway).  Furthermore, Whitehead’s complaint that the public allegedly no
longer uses the roadway is not evidence that it is not a public road.  Baker
v. Peace, 172 S.W.3d 82, 90 (Tex. App.—El Paso 2005, pet. denied) (“A
public road does not depend upon its length or upon the places to which it
leads, nor upon the number of persons who actually travel upon it.  In fact,
proof that a road is only slightly traveled by the public is not proof that a
road is not a public road.”) (citations omitted).  We conclude that the
Mackenzies established public use of the roadway.

We
therefore hold that the trial court did not err by granting the Mackenzies’
summary judgment motion predicated on the theory that the roadway had been
impliedly dedicated to the public.  See Owens v. Hockett, 151 Tex. 503,
506–07, 251 S.W.2d 957, 959 (Tex. 1952) (implied dedication where evidence
showed roadway was segregated from land by fencing, landowner and others knew
of county maintenance, and public used the road prior to the landowner
obstructing the road).  We overrule Whitehead’s first issue and these portions
of her second issue.  Furthermore, because we hold that the trial court
properly granted the Mackenzies’ motion for summary judgment, we overrule the
portion of Whitehead’s second issue predicated on her trespass to try title
claim.

C.      Abuse
of Process

In
the remainder of her second issue, Whitehead argues that the trial court erred
by not granting her motion for summary judgment because, according to
Whitehead, the Mackenzies as a matter of law had abused process.

Abuse
of process is the malicious use or misapplication of process in order to
accomplish an ulterior purpose.  Hunt v. Baldwin, 68 S.W.3d 117, 129
(Tex. App.—Houston [14th Dist.] 2001, no pet.); Detenbeck v. Koester,
886 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, no writ).  To prove a
claim for abuse of process, Whitehead needed to show that (1) the
Mackenzies made an illegal, improper or perverted use of the process, a use
neither warranted nor authorized by the process; (2) the Mackenzies had an
ulterior motive or purpose in exercising such illegal, perverted, or improper
use of the process; and (3) damage occurred as a result of such illegal
act.  See Hunt, 68 S.W.3d at 129.  Texas law recognizes a cause of
action for abuse of process where the original process has been used to
accomplish an end other than that which it was designed to accomplish.  Id.
at 130.  In other words, the original issuance of the legal process was
justified, but the process itself was subsequently used for a purpose for which
it was not intended.  See id.  When the process is used for the
purpose for which it is intended, even though accompanied by an ulterior
motive, no abuse of process occurs.  Baubles & Beads v. Louis Vuitton,
S.A., 766 S.W.2d 377, 378–79 (Tex. App.—Texarkana 1989, no writ).

Here,
the Mackenzies used the process for the purpose for which it was intended;
namely, the trial court initially granting injunctive relief and ultimately
granting judgment in favor of the Mackenzies that they had the right to use the
roadway.  Thus, the trial court did not err by denying Whitehead’s summary
judgment motion based on her abuse of process claim.  We overrule the remainder
of Whitehead’s second issue.

IV.  Conclusion

Having overruled both of Whitehead’s issues,
we affirm the trial court’s order.

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

 

DELIVERED: 
July 14, 2011









[1]See Tex. R. App. P. 47.4.