

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00430-CV

**TEXAS DEPARTMENT OF TRANSPORTATION** and James M. Bass,
Appellants

v.

**ROBERT DIXON TIPS PROPERTIES**, LLC,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI10003
Honorable Tina Torres, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                  Luz Elena D. Chapa, Justice
                  Irene Rios, Justice

Delivered and Filed: March 8, 2023

REVERSED AND RENDERED

Appellants, the Texas Department of Transportation and James M. Bass (collectively "TxDOT"), bring an interlocutory appeal from the trial court's order denying TxDOT's motion to dismiss for lack of subject matter jurisdiction an unlawful taking without compensation claim asserted by Robert Dixon Tips Properties, LLC ("Tips Properties"). In two issues, TxDOT contends that the trial court erred in denying its motion because it enjoys sovereign immunity over

Tips Properties' (1) unlawful taking without compensation claim and (2) request for declaratory relief. We reverse and render.[1]

## I. BACKGROUND

The underlying dispute stems from a TxDOT project to expand a portion of U.S. Highway 281 that abuts property owned by Tips Properties. As part of the project, TxDOT used, among other things, the 12,177 square foot portion (the "disputed portion") of Northwind Boulevard, a roadway that perpendicularly intersects with U.S. Highway 281. Below is an annotated depiction of the area in question, taken from a 1966 plat:



The disputed portion of Northwind Boulevard sits on land that traverses Lots 76 and 77, and it leads into the Northwind Estates Subdivision, which was established in 1966. In 2014, Tips

---

[1] We issued our memorandum opinion and judgment on August 10, 2022. TxDOT timely filed a motion for rehearing and a motion for rehearing en banc. Pursuant to our request, Tips Properties has filed responses to both motions. The panel on original submission, having fully examined and considered TxDOT's motion for rehearing and Tips Properties' response, is of the opinion that TxDOT's motion for rehearing should be granted. *See* TEX. R. APP. P. 49.3. Accordingly, we withdraw our earlier memorandum opinion and judgment and substitute the following memorandum opinion and its accompanying judgment in their place.

Properties purchased the fee title to Lots 76 and 77. Since Tips Properties' acquisition, it has sold parts of Lots 76 and 77 to TxDOT at negotiated prices. However, Tips Properties did not sell the disputed portion of Northwind Boulevard. Tips Properties contends that Northwind Boulevard is a private roadway. TxDOT contends that Northwind Boulevard was publicly dedicated when the Northwind Estates Subdivision was created.

In 2018, Tips Properties filed suit against TxDOT. Tips Properties asserted a claim for unlawful taking without compensation, requested a declaration that Northwind Boulevard is not a public road and that TxDOT owed Tips Properties compensation for the disputed portion, and sought temporary and permanent injunctions barring TxDOT from construction activity on the disputed portion. TxDOT answered with a general denial, and it asserted that sovereign immunity shielded it from suit and liability.

Eventually, TxDOT filed a combined motion to dismiss for lack of subject matter jurisdiction and no-evidence motion for summary judgment. In its motion to dismiss, TxDOT asserted that Northwind Boulevard was publicly dedicated. As support, TxDOT attached a declaration and plat, recorded under Volume 5629, Page 387, that was executed on September 6, 1966. The declaration provides in relevant part:

> WHEREAS, the undersigned as owners are subdividing said property into a Subdivision named NORTHWIND ESTATES a copy of said Plat is attached hereto for informative purposes, and the owners do by this instrument dedicate for public use and for the use of the adjoining property owners the Streets shown on said plat[.]

(hereinafter "the roadway clause"). Attached to the declaration are several pages of a plat that show numbered lots, including Lots 76 and 77, and unnamed roadways.[2] TxDOT asserted that the public dedication of Northwind Boulevard, one of the unnamed roadways, was accepted by public

---

[2] The annotated depiction above is from one of these plats.

use. It also asserted that the public dedication was expressly accepted by a "Corrective Affidavit of State Public Right of Way," executed by Mario Jorge, P.E., the TxDOT District Engineer of the San Antonio District, on December 14, 2017. In his affidavit, Jorge states:

> It is the purpose of this affidavit to establish and place of record in the Official Public Records of Real Property of Bexar County, Texas, a legal description of a strip of land dedicated to the public for right of way purposes located in Bexar County, Texas said dedication recorded of record in Volume 5629, Page 387 of the Map and Plat Records of Bexar County, Texas, said dedication also being known within the City Limits of San Antonio as Northwinds [sic] Boulevard. In accordance with V.T.C.A. Transportation Code, Chapter 203, Subchapter A, all of that property known as Parcel 66[3] and described in Exhibit "A" attached hereto and incorporated herein by reference as if set out at length, has been incorporated by the Texas Department of Transportation into the right of way boundary for US 281 in Bexar County, Texas, and is now under the jurisdiction and operational authority of the Texas Department of Transportation.

TxDOT argued that the declaration and plat, coupled with Jorge's affidavit, established its ownership of the disputed portion and precluded Tips Properties from maintaining an inverse condemnation claim, thereby depriving the trial court of subject matter jurisdiction.

Tips Properties' written response to TxDOT's motion to dismiss maintained that the disputed portion of Northwind Boulevard was a private roadway. It asserted that the clause providing "for public use and for the use of the adjoining property owners . . . ." in the declaration was neither formally accepted by any governmental body nor accepted by public use. In support, Tips Properties attached five exhibits to its response: (1) the affidavit of Robert D. Tips; (2) the deed for Lots 76 and 77; (3) a Google Maps terrain view of Northwind Boulevard; (4) a photograph with signs denoting "Northwind Estates", "No Access to Coronado", "Dead End No Outlet", and "End Road Work"; and (5) the same declaration and plat submitted by TxDOT.

---

[3] The parties agree that Parcel 66 is the disputed portion of Northwind Boulevard.

After hearing TxDOT's motion to dismiss and no-evidence motion for summary judgment and considering Tips Properties' response and the arguments of counsel, the trial court denied both motions. TxDOT timely appeals from the trial court's denial of its motion to dismiss.

## II. DISCUSSION

### A. Standard of Review

Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019). Because the assertion of sovereign immunity implicates the court's jurisdiction, immunity is properly raised in a plea to the jurisdiction. *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). A motion to dismiss based on a lack of jurisdiction, which TxDOT filed in this case, is the "functional equivalent of a plea to the jurisdiction; both challenge the trial court's power to determine the subject matter of a claim." *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 112 (Tex. App.—Dallas 2012, no pet.) (citing *Patton v. Jones*, 212 S.W.3d 541, 545 (Tex. App.—Austin 2006, pet. denied)).

"Where a government entity challenges jurisdiction on the basis of immunity, 'the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.'" *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (quoting *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)). "Whether sovereign immunity defeats a trial court's subject matter jurisdiction is a question of law." *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904–05 (Tex. 2021). We review orders on pleas to the jurisdiction *de novo*. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019).

Resolution of a plea to the jurisdiction may be on the pleadings or an evidentiary record; "[a] plea to the jurisdiction 'may challenge the pleadings, the existence of jurisdictional facts, or

both.'" *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). In this case, both parties' jurisdictional arguments are advanced by directing us to evidence that the trial court considered.

When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject matter jurisdiction and the merits of a claim." *Clark*, 544 S.W.3d at 770–71. When a plea to the jurisdiction requires the consideration of evidence, we utilize a process that mirrors that used for a traditional motion for summary judgment. *Id*. at 771. "Initially, the defendant carries the burden to meet the summary[-]judgment[-]proof standard for its assertion that the trial court lacks jurisdiction." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). "If [the defendant carries that burden], the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue." *Id*. "If a fact issue exists, the trial court should deny the plea." *Id*. "But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Id*. "In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Clark*, 544 S.W.3d at 771.

We address the question of whether there is jurisdiction on a claim-by-claim basis. *See Amador v. City of Irving*, No. 05-19-00278-CV, 2020 WL 1316921, at *7–8 (Tex. App.—Dallas Mar. 20, 2020, no pet.) (mem. op.) ("[T]he Supreme Court has made clear that 'a plaintiff must demonstrate that the court has jurisdiction over . . . each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction.'" (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152–53 (Tex. 2012))).

**B.       Tips Properties' Procedural Concerns**

"It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004) (citing Tex. Const. art. I, § 17).[4] Thus, if an inverse condemnation claimant does not own the disputed land, its takings claim is not viable, and the trial court lacks jurisdiction. *Tex. Dep't of Transp. v. A.P.I. Pipe and Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

TxDOT contends that Tips Properties does not own the disputed portion of Northwind Boulevard because it was dedicated for public use. Tips Properties responds by arguing that TxDOT's public-dedication argument is an affirmative defense and that TxDOT is asking us "to shift the burden on this defense to" Tips Properties. Tips Properties' burden shifting argument is unpersuasive for two reasons. First, whether Tips owns the disputed portion of Northwind Boulevard is integral to deciding subject matter jurisdiction. *Id*. Second, from a procedural posture, TxDOT is not seeking to shift its burden. Instead, it seeks an opportunity to establish, as a matter of law, that Tips Properties does not own the disputed portion of Northwind Boulevard. Such a posture comports with the evidentiary framework that guides how we analyze pleas to the jurisdiction. *See Garcia*, 372 S.W.3d at 635.

**C.    Applicable Law: Public Dedication**

"Dedication" is the act of appropriating private land to the public for any general or public use. *Hatton v. Grigar*, 66 S.W.3d 545, 554 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Scott v. Cannon*, 959 S.W.2d 712, 718 (Tex. App.—Austin 1998, pet. denied). "Once dedicated, the

---

[4] Article I, section 17 of the Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17(a).

owner of the land reserves no rights that are incompatible with the full enjoyment of the public." *Hatton*, 66 S.W.3d at 554. "There are two types of dedications, express and implied." *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.). There are four elements to establish dedication, whether express or implied: (1) the person making the dedication must have the ability to do so — he must have fee simple title before he can dedicate his property; (2) there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer. *Id*. at 42 n.2; *Lindner v. Hill*, 673 S.W.2d 611, 616 (Tex. App.—San Antonio 1984), *aff'd*, 691 S.W.2d 590 (Tex. 1985). Generally, an express dedication is accomplished by deed or other written document. *Stein*, 53 S.W.3d at 42; *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). The parties' dispute centers on the third and fourth elements.

**D.     Analysis:  Public Dedication**

The 1966 declaration's roadway clause provides that "the owners do by this instrument dedicate for public use and for the use of the adjoining property owners the Streets shown on said plat." TxDOT posits that, as a matter of law, this clause is an express public dedication and that Engineer Jorge's affidavit testimony constitutes an acceptance of the express public dedication. The 2014 deed, by which Tips Properties acquired fee title to Lots 76 and 77, provides that the "conveyance is made and accepted subject to all restrictions, reservations, covenants, and exceptions appearing of record in the Official Public Records of Real Property (and related and predecessor real property records) of Bexar County, Texas . . . ." It also provides that the "conveyance is also made and accepted subject to . . . [a]ny visible and apparent roadway or easements over or across the Property or affecting any portion of the Property, the existence of which does not appear of record."

Tips Properties responds by arguing that the "question of whether or not a dedication to public use has occurred is invariably a question of fact" and that "[p]ublic dedication is thus improper grounds for dismissal for lack of subject matter jurisdiction." However, this argument goes too far. Indeed, the four intermediate appellate court opinions that Tips Properties references do not support the rule it proposes, but are merely examples of when a fact question exists as to whether there has been a dedication or an easement.[5]

In determining whether the roadway clause constitutes an express offer, we find the case of *McLennan County v. Taylor*, 96 S.W.2d 997, 997–98 (Tex. Civ. App.—Waco 1936, writ dism'd), instructive. In *Taylor*, a landowner recorded in the county deed records a plat that showed various streets and alleys and contained the following language, "Streets shown on this map from east side of river and west line of Third street between my upper and lower line dedicated and donated to public use. All other streets are hereby specially reserved by me." The county argued that "the filing of the plat in question and the conveyance of property with reference to said plat . . . amounted to a complete and irrevocable dedication of the streets shown thereon to public use." *Id*. at 998. The Tenth Court of Appeals agreed. *Id*. The roadway clause in this case is similar to the referenced clause in *Taylor*. In this case, the plat that accompanied the 1966 declaration contains clearly demarcated, if unnamed, streets. We agree with TxDOT's contention that the roadway clause constitutes an express offer of dedication.

---

[5] Tips Properties cites *Kelley v. City of Hitchcock*, No. 14-98-00940-CV, 2000 WL 257815, at *3 (Tex. App.—Houston [14th Dist.] Mar. 9, 2000, no pet.) (not designated for publication), which concerns an easement when there was no "defined right-of-way in the deed." Tips Properties also cites *Callaghan Ranch, Ltd. v. Killam*, No. 04-10-00802-CV, 2012 WL 394594, at *3 (Tex. App.—San Antonio, Feb. 8, 2012, pet. denied) (mem. op.), *Steel v. Wheeler*, 993 S.W.2d 376, 378 (Tex. App.—Tyler 1999, pet. denied), and *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1992, writ denied), which all concern implied — not express — dedications. Furthermore, we note that that *Killam*, *Steel*, and *Fazzino* reference *Broussard*, 792 S.W.2d at 537 for the rule that "[w]hether a road has been dedicated for public use is a question of fact." *Broussard* specifically provides that "[w]hether a road has been dedicated to public use is *generally* a fact question." *Id.* (emphasis added) (citing *O'Connor v. Gragg*, 339 S.W.2d 878, 882–83 (1960)).

We next turn to the evidence Tips Properties contends creates a fact issue that precludes TxDOT from establishing, as a matter of law, that the disputed portion was expressly dedicated as a public road. *See Garcia*, 372 S.W.3d at 635 ("If [the defendant carries that burden], the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue."). First, Tips Properties argues that the plat "does not specify what is being dedicated" because it "does not identify Northwind Boulevard by name." On rehearing, TxDOT references *Adams v. Rowles*, 228 S.W.2d 849, 851 (Tex. 1950) and *Sanborn v. City of Amarillo*, 93 S.W. 473, 474 (Tex. Civ. App. 1906, writ ref'd), as support for why Tips Properties' unnamed-streets argument fails. In *Sanborn*, the court applied the "settled" principle:

> [T]hat where the owner of land lays out and establishes a town, and makes and exhibits a map or plan of the town, with streets and public squares[,] . . . the sale and conveyance of lots according to such map implies a grant or covenant for the benefit of the owners of the lots, [and] the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map.

93 S.W. at 474 (citing *Oswald v. Grenet*, 22 Tex. 94, 100 (1858)). In *Adams*, the Texas Supreme Court wrote:

> [I]f one owning land, exhibit[s] a map of it, on which a street is defined, *though not as yet opened*, and building lots to be sold by him, with reference to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever.

228 S.W.2d at 851 (emphasis added).

The plat that accompanied the 1966 declaration dedicates "the Streets shown on said plat." Although unnamed, one of those streets shown is the street now known as Northwind Boulevard.[6]

---

[6] At the hearing on TxDOT's motion, Tips Properties acknowledged: "The property we are talking about is this .2 mile stretch of road called Northwind Boulevard that connects 281 to a subdivision called Northwind Estates. This is property that Plaintiff purchased back in 2014."

The rule articulated in *Sanborn* and *Adams* compels us to conclude that no fact issue exists as to whether the dedication included the disputed portion of Northwind Boulevard.

Second, Tips Properties argues, without reference to authority, that fact issues exist regarding its ownership of the disputed portion because (1) it paid taxes on the disputed portion,[7] (2) no governmental entity maintained the disputed portion, (3) the City of San Antonio's sign "indicates that Northwind Boulevard is a private road,"[8] and (4) the disputed portion was not used by the public. Tips Properties' argument is not supported by references to legal authority. Therefore, it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). More fundamentally, Tips Properties fails to explain how the four pieces of evidence raise a fact question when the plat, here, includes an express dedication. *See Taylor*, 96 S.W.2d at 998.

Third, Tips Properties contends that TxDOT's taking of the disputed portion for a highway expansion project "impermissibly changes the use of the road." In support of its argument, Tips Properties references, without analysis, *City of Dallas v. Gibbs*, 65 S.W. 81, 83 (Tex. Civ. App. 1901, writ ref'd), and *Zachry v. City of San Antonio*, 305 S.W.2d 558, 560 (Tex. 1957). In TxDOT's reply brief on original submission, it argues that Tips Properties' reliance on these two cases is misplaced. Specifically, TxDOT argued that:

---

[7] On rehearing, TxDOT referenced, among other cases, *Maisen v. Maxey*, 233 S.W.2d 309, 313 (Tex. App.—Amarillo 1950, writ ref'd n.r.e.), in support of its argument for why Tips Properties' purported payment of property taxes on the disputed portion did not affect the express public dedication. In *Maisen*, the court writes "that where there was a designation of a park on a plat of an addition to a city and a sale of lots made by reference to the plat, the fact that the one making the addition rendered the park property for taxes and paid taxes thereon did not interfere with the dedication." *Id.* (citing *Sanborn*, 93 S.W. at 474).

[8] We note that none of the photographs of signs in the record include the phrase "private road." Notwithstanding the lack of the phrase "private road," Robert D. Tips provided affidavit testimony that "the City erected a street sign identifying Northwind Boulevard as a private road." At best, this testimony is conclusory. *See Gonzales v. Shing Wai Brass and Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion, and is insufficient to create a question of fact to defeat summary judgment.").

> *Gibbs* . . . , involved a delay of the city authorities in putting the land to the uses for which it was dedicated and did not involve a different use[, and] *Zachry* . . . concerned land that was dedicated for use as a public park but was being used as a parking garage, which is clearly a different use than that for which it was dedicated.

We agree with TxDOT that Tips Properties' reliance on *Gibbs* and *Zachary* does not support its implied contention that TxDOT's acceptance of the disputed portion fails because a "highway expansion" is an "impermissible change" from the express public dedication articulated in the 1966 declaration.

TxDOT's first issue is sustained.

## E.    Tips Properties' Requests for Declaratory and Injunctive Relief

In the trial court, TxDOT's motion to dismiss did not assail the trial court's subject matter jurisdiction over Tips Properties' request for declaratory relief. Nevertheless, it does so for the first time on appeal. Tips Properties' request for declaratory (and injunctive) relief is a recasting of its inverse condemnation claim, for which there is no subject matter jurisdiction. Accordingly, the pleadings and record conclusively negate subject matter jurisdiction over Tips Properties' request for declaratory and injunctive relief; therefore, we must dismiss these requests. *See McAllen Hosps., L.P. v. Suehs*, 426 S.W.3d 304, 316 (Tex. App.—Amarillo 2014, no pet.) ("Not having independently established the trial court's subject matter jurisdiction over their claims, the Hospitals cannot assert those claims as claims for declaratory relief; the trial court lacks jurisdiction over them." (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011))).

TxDOT's second issue is sustained.[9]

---

[9] Tips Properties contends that TxDOT waived any jurisdictional challenge as to Tips Properties' request for declaratory relief by not presenting it to the trial court; however, Tips Properties' waiver contention is unpersuasive because appellate courts have been directed to address such additional grounds even when raised for the first time in an interlocutory appeal. *See Dallas Cnty. v. Logan*, 407 S.W.3d 745, 746 (Tex. 2013) (per curiam); *see also Tex. Dep't of Transp. v. Markham*, No. 04-18-00812-CV, 2019 WL 3937277, at *4 (Tex. App.—San Antonio, Aug. 21, 2019, pet. denied) (mem. op.).

**III. CONCLUSION**

We reverse the trial court's order denying TxDOT's motion to dismiss and render judgment dismissing all of Tips Properties' claims and requests for declaratory and injunctive relief against TxDOT with prejudice.

Rebeca C. Martinez, Chief Justice